UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID SCOTT, #191939,

                Plaintiff,

                                          Case No. 03-CV-75123

vs.                                    HON. GEORGE CARAM STEEH

B. STONE, et al.,

                Defendant.

_____/

### ORDER REJECTING IN PART REPORT AND RECOMMENDATION (#30) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (#17) AND DISMISSING PLAINTIFF'S CLAIMS

       Plaintiff David Scott, a Michigan prisoner appearing pro se, filed 42 U.S.C. § 1983 claims of conspiracy and retaliation against Saginaw Valley Correctional Facility ("SVCF") staff members Bernadette Stone, Tracie Shaw, Michael Lewis, and Jan Bigelow.  The matter was referred to Magistrate Judge Paul Komives who issued a 52-page Report and Recommendation on January 31, 2006 recommending that defendants' motion for summary judgment be denied.  Defendants filed timely objections on February 10, 2006. For the reasons set forth below, the court rejects the Report and Recommendation to the extent this court GRANTS defendants' motion for summary judgment on determinations that: (1) Scott has not proffered sufficient evidence to support a First Amendment retaliation claim; (2) Scott has not proffered sufficient evidence to support a finding of an unlawful conspiracy to retaliate; and (3) defendants are entitled to qualified immunity.

### I.  Background

The factual circumstances underlying Scott's lawsuit are set forth in the Report and Recommendation with particular detail, and will be reiterated herein only to the extent necessary to adjudicate defendants' objections.  Scott was transferred to SVCF on July 17, 2000 where defendant Stone was Grievance Coordinator, defendant Shaw was the Assistant Resident Unit Supervisor in Scott's housing unit, and defendants Lewis and Bigelow were Resident Unit Officers ("RUO").   From August 2000 until Scott was transferred out of SVCF in February 2001, Scott filed 10 grievances and 123 proposed grievances.  Scott claims Grievance Coordinator Stone conspired with the other defendants to retaliate against him for filing so many grievances.

Specifically, Scott asserts that, on Stone's request, he was placed on "modified access status" to the SVCF grievance process on October 12, 2000, and that this status was extended through July 11, 2001, again on Stone's request, on December 26, 2000. Scott alleges that Stone called him into her office on January 19, 2001 and complained to him about the number of grievances he was filing and the amount of time it took her to process the grievances.  Scott alleges that Stone also produced handmade envelopes Scott had used to file his grievances, noting to Scott that the envelopes  were secured with masking tape, an item deemed a to be "dangerous tool" contraband when in possession of Security Level II prisoners such as Scott.  Scott explained to Stone that he took the masking tape off of footlockers packed by prison personnel to transport his belongings to SVCF.  Scott alleges and attests that Stone responded "this is going to end once and for all," and  that "the only way to deal with you and your grievances is to increase your security level and transfer you to a higher security."  Scott alleges that, when he left Stone's office and returned to his housing unit, he was met by Assistant Unit Supervisor Shaw and

2

RUOs Lewis and Bigelow. Scott attests that he was told not to report to his cell, but to instead wait outside Shaw's office. Scott attests that Stone then appeared in the Unit, and met with Shaw, Lewis, and Bigelow inside Shaw's office. Scott attests he then observed Stone show Shaw, Lewis and Bigelow a misconduct ticket, whereafter each proceeded to write a separate misconduct ticket, presumably against Scott.

It is undisputed that Scott received four major misconduct tickets on January 19, 2001: (1) a 3:55 p.m. ticket from Stone for possession of masking tape as a "dangerous tool," (2) a 4:50 p.m. ticket from Shaw for "threatening behavior" toward another prisoner; (3) a 6:30 p.m. ticket from Lewis for possession of masking tape within Scott's cell; and (4) a 7:30 p.m. ticket from Bigelow for being "out of place." Scott alleges that each of the tickets was "false." Scott alleges and attests that, in addition to the retaliatory statements made by Stone, each of the other ticket issuers made specific incriminating statements: Lewis allegedly said "your days of filing grievances are over"; Shaw allegedly said "seems you would learn that grievances cause you nothing but grief"; Bigelow allegedly said "because of your grievances, you have no one to blame but yourself." Scott was assigned to segregation pending a January 22, 2001 hearing on the tickets, and on January 23, 2001, SVCF Hearing Investigator Freed recommended that the Stone and Lewis tickets for possession of masking tape be "pulled" on Freed's assessment that prison personnel's use of masking tape in packing Scott's footlocker implicitly authorized Scott to possess the tape. Freed's recommendation was approved by the Warden. Scott alleges he was thus "acquitted" of the charges in these two tickets, and that the tickets were issued without probable cause. Scott alleges that Bigelow's ticket for being "out of place" was also dismissed. Scott allegedly wrote to Lewis on January 26, 2001 about one of the tickets,

3

and submitted proposed grievances regarding Stone's and Lewis's January 19, 2001 tickets. On January 29, 2001, Stone wrote to Scott regarding his modified access grievance requests, and granted at least one of Scott's requests. Scott allegedly wrote to the Warden's Office on February 1, 2001 complaining that Stone had failed to respond to his proposed grievance against Lewis. Scott also allegedly complained to the Director of the Michigan Department of Corrections ("MDOC"). Scott was transferred out of SVCF on February 16, 2001 to the higher security Muskegon Correctional Facility where his status was increased to Level III.

## II. Objections and
## Standard of Review

The Report and Recommendation recommends that defendants' motion for summary judgment be denied on findings that: (1) Scott has exhausted his administrative remedies; (2) Scott has produced sufficient evidence to support a finding that Bigelow was personally involved in the alleged conspiracy and retaliation; (3) Scott has alleged and proffered sufficient evidence to support a First Amendment retaliation claim; (4) Scott has alleged and proffered sufficient evidence to support a finding of an unlawful conspiracy to retaliate; (5) defendants are not entitled to qualified immunity; and (6) defendants' request for an award of costs and fees is premature. Defendants raise six specific objections to the Report and Recommendation: (1) the tickets issued by Shaw and Bigelow do not support a retaliation or conspiracy claim because Scott was convicted of the charges; (2) the tickets issued by Lewis and Stone do not support a retaliation or conspiracy claim because they were not "false," and would have been issued notwithstanding Scott's grievance filing history; (3) the undisputed chronology of events does not support Scott's conspiracy claim;

4

(4) the Magistrate Judge noted but failed to apply the intra-corporate conspiracy doctrine; (5) the Magistrate Judge noted but failed to apply the principle that filing grievances in a manner that violates legitimate prison regulations and objectives does not constitute "protected activity"; and (6) the Magistrate Judge erred in finding that the defendants were not entitled to qualified immunity.

"A judge of the court shall make a de novo determination of those portions of a report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636 (b)(1)(C).  "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."  Id.

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001).  The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

5

*genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

### III. Analysis

#### A. Complaint

Scott's factual allegations supporting his 42 U.S.C. § 1983 claims of retaliation and conspiracy are confined to allegations that Stone and Lewis issued misconduct tickets to him on January 19, 2001, that Stone met with Lewis, Bigelow and Shaw to issue "said charges," that "said charges were issued . . . to increase his security level to prompt his transfer," that Stone and Lewis "knew the allegations and charges made by them to be false and . . . aided by defendants Shaw and Bigelow, conjured up said charges," and that the defendants "lacked any probable cause whatsoever to believe defendant guilty of any offense, and particularly the offenses of possession of dangerous contraband which did not occur but were fabricated by Defendants." Complaint, ¶¶ 11-12, 15-17, at 3-5. Scott's

6

allegations as to what each defendant said to him are alleged to support a finding that each of the four defendants shared an improper retaliatory motive.  See Complaint, ¶ 14(a-d), at 4.

### B.  Factual Basis For Misconduct Charges

It is beyond genuine dispute that the allegations underlying each of the four misconduct tickets were indeed true: (1) Scott was in possession of masking tape as alleged by Stone, admittedly affixing masking tape to envelopes used to submit his grievances, and was thus in possession of "dangerous tool" contraband in violation of PD 04.04.120 and PD 03.03.105; (2) Scott did exhibit "threatening behavior" toward prisoner Spaccarotella as alleged by Shaw and adjudicated by Hearing Officer Kuiper on January 24, 2001; (3) Scott was in possession of masking tape within the cell he shared with no other prisoner, as alleged by Lewis, and was thus in possession of "dangerous tool" contraband in violation of PD 04.04.120 and PD 03.03.105; (4) Scott was "out of place" as alleged by Bigelow and adjudicated by Hearing Officer Perrin on February 2, 2001.  Scott's assertion that the charges in Bigelow's ticked were dismissed is undisputedly incorrect.

In Major Misconduct Hearing Reports issued by Hearing Officers Kuiper and Perrin with respect to the charges filed by Shaw and Bigelow, respectively, there is no mention that Scott defended the charges of "threatening behavior" and "out of place" as factually baseless and the product of being "framed."[1]  As to the tickets issued by Stone and Lewis, it is beyond dispute that the tickets were "pulled" by Hearing Investigator Freed only after

---

[1]  With respect to the "threatening behavior" charge, Scott was accused by his fellow prisoner of arguing, calling him "a bitch," taking off his glasses and watch, and taking a "fighting stance."  As to the "out of place" charge, Scott was accused of leaving his room under "top lock" security without receiving specific authorization by a staff member.

Freed determined that Scott had been implicitly authorized to possess the otherwise "dangerous tool" contraband when prison personnel at another correctional facility packed Scott's footlockers for shipment to SVCF.  Nothing in the record would allow a reasonable jury to conclude that, at the time Stone and Lewis charged Scott with possession of masking tape as "dangerous tool" contraband, Stone and Lewis knew that Freed and the Warden would later rule that Scott had been granted implicit permission to remove the tape from his footlockers and to continue possession of the tape for future use.  Scott's transfer to SVCF was completed six months before Stone and Lewis wrote their tickets.  There is no genuine dispute that, at the time Stone and Lewis issued their misconduct tickets,  Scott was in possession of masking tape in violation of PD 04.04.120 and PD 03.03.105.  Stated simply, nothing in the record supports a finding that Stone or Lewis knew or should have known that the Warden would later excuse Scott's possession of masking tape under a theory of implied authorization.  Scott's allegations that Stone and Lewis "knew the allegations and charges made by them [were] false," that the charges were "conjured up," and that the defendants "lacked any probable cause whatsoever to believe defendant guilty of any offense, . . . particularly the offenses of possession of dangerous contraband which did not occur but were fabricated," are belied by the record.

Scott's attempt to link the defendants as co-conspirators by alleging that he observed Lewis, Shaw, and Bigelow write their respective misconduct tickets in Shaw's office immediately after Stone showed them the ticket she had written is also unsupportable on this record.  Even assuming that Lewis, Shaw, and Bigelow fabricated the timing of their tickets as they allegedly wrote their tickets in Shaw's office - Stone's 3:55 p.m. ticket, Shaw's 4:50 p.m. ticket, Lewis' 6:30 p.m. ticket, and Bigelow's 7:30 p.m. ticket - a

8

reasonable jury could not conclude that Shaw could foresee that Scott would later that day exhibit "threatening behavior" toward the specific prisoner Spaccarotella, or that Scott could foresee that Scott would later that day would be "out of place." Again, Scott did not argue to the Hearing Officers that these charges were "fabricated." In that Scott admitted to Stone that he possessed the masking tape affixed to the envelopes he used to submit grievances, it was not unreasonable for Lewis to surmise that additional masking tape contraband would be found in Scott's cell, a cell Scott had not returned to since leaving Stone's office. Scott's allegations that he watched Lewis, Shaw, and Bigelow together write tickets in Shaw's office does not support a reasonable inference of retaliation or conspiracy.

As recognized by Magistrate Judge Komives, the elements of a First Amendment retaliation claim are: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; (3) a causal connection between the protected conduct and the adverse action taken; and (4) that the adverse action taken was motivated, at least in part, by the plaintiff's protected conduct. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999). If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to summary judgment as a matter of law. Id. at 399. Further, civil rights defendants enjoy qualified immunity from civil liability to the extent "their conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity may be defeated, however, on proof that the official took action with malicious intent to cause the deprivation of a federal right. Id. at 815.

Defendants have proffered evidence demonstrating beyond dispute that they each

9

would have written their respective misconduct tickets even if Scott had not written 133 grievances and proposed grievances in the span of seven months.  Shaw's and Bigelow's tickets were issued, and upheld, on grounds independent of Scott's penchant for filing grievances and proposed grievances: exhibiting "threatening behavior" toward prisoner Spaccarotella, and being "out of place."  Scott has cited no authority for the proposition that prisoners that file grievances are excused from conforming their conduct to prison standards lest an independent violation of legitimate prison rules be construed as retaliatory conduct.  As explained herein, there is no logical way Shaw or Bigelow could have foreseen when meeting with Stone in Shaw's office that Scott would later threaten Spaccarotella or leave his cell without authorization.   A reasonable jury could not conclude there is a requisite causal connection between Stone's "protected activity" of submitting grievances and proposed grievances, and being ticketed for threatening a fellow prisoner and being out of place.  <u>Thaddeus-X</u>, 175 F.3d at 394.  At minimum, Shaw and Bigelow enjoy qualified immunity because a reasonable person would believe that charging Scott for "threatening behavior" and being "out of place" would not violate clearly established federal law.  <u>Harlow</u>, 457 U.S. at  818.  In that Stone's and Lewis' tickets were "pulled" by authority of the Warden, the only reasonable misconduct ticket link to Scott's transfer to a higher security facility are the tickets issued by Shaw and Bigelow, charges for which Scott was adjudicated to be "guilty" by Hearing Officers that are not alleged to be part of the alleged conspiracy.

Likewise, defendants Stone and Lewis have shown that they would have issued their misconduct tickets against Scott for possession of "dangerous tool" contraband even if Scott were not engaged in writing numerous grievances.  As argued by defendants, Stone

10

and Lewis are required by prison regulations to write up a major misconduct ticket if they observe a non-bondable offense such as possession of a "dangerous tool."  <u>See</u> P.D. 03.03.105.  Only the Warden enjoys authority to "pull" such a ticket as "not appropriate."  <u>See</u> PD 03.03.105(K)(3).  Stone and Lewis were required to issue the tickets independent of Scott's proclivity for filing grievances.  <u>Thaddeus-X</u>, 175 F.3d at 394.  Scott has failed to come forward with evidence to support a finding that Stone and/or Lewis maliciously refused to foresee that Freed and the Warden would find the tickets to be inappropriate based on a determination of implied consent.  At minimum, Stone and Lewis are entitled to qualified immunity because a reasonable person would believe that charging Scott with possession of a "dangerous tool" under the circumstances would not violate clearly established federal law.  <u>Harlow</u>, 457 U.S. at  818.

Scott is left with his allegations and attestations that each of the defendants made remarks to him incriminating themselves in a conspiracy to chill his First Amendment right to file grievances.  To succeed on a conspiracy claim, Scott is required to prove that two or more people agreed to violate his civil rights, that these people shared in the conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury.  <u>Pizzuto v. County of Nassau</u>, 239 F.Supp.2d 301, 308 (E.D.N.Y. 2003).  As discussed above, the tickets issued by each of the four defendants were legitimately issued, and thus cannot reasonably be construed as the requisite overt acts committed in furtherance of an unlawful conspiracy.  As already explained, Scott's allegations that the defendants met in Shaw's office and simultaneously wrote tickets based on unforeseeable future conduct ("threatening behavior" and "out of place") and foreseeable sanctionable conduct (possession of masking tape within his cell) do not

11

support a finding of an unlawful conspiracy among the defendants.  Scott's self-serving attestations that the defendants each professed their agreement to him to violate his First Amendment rights, on this record, constitutes a mere scintilla of evidence that cannot defeat the defendants' motion for summary judgment, particularly, and do not prove  an unlawful act committed in furtherance of an unlawful conspiracy that caused Scott's alleged injury.  Anderson, 477 U.S. at 248, 252.

At best, the statements allegedly made by the defendants, consistent with the undisputed circumstances of this case, had a chilling effect upon Scott's continuing violation of legitimate prison rules such as possessing dangerous contraband, threatening other prisoners, or being in places he was unauthorized to be.  Scott's claims boil down to alleging that the defendants refused to exercise leniency as to his violations of clearly established prison regulations that unquestionably advance legitimate penal objectives.  See generally Barnett v. Centoni, 31 F.3d 813, 815-816 (9th Cir. 1994).  Construing the pleading and evidence in a light most favorable to Scott, Scott has failed to proffer sufficient evidence to support his retaliation and conspiracy claims.  Anderson, 477 U.S. at 248, 252; McLean, 224 F.3d at 800.  The record is so one-sided that the defendants are entitled to judgment as a matter of law.  Amway Distributors, 323 F.3d at 390.  The court need not address defendant's objection based on the intra-corporate conspiracy doctrine in reaching this conclusion.

## IV. Conclusion

The court rejects the January 31, 2006 Report and Recommendation to the extent this court GRANTS defendants' motion for summary judgment on determinations that: (1) Scott has not proffered sufficient evidence to support a First Amendment retaliation claim;

12

(2) Scott has not proffered sufficient evidence to support a finding of an unlawful conspiracy to retaliate; (3) defendants are entitled to qualified immunity.  Plaintiff Scott's claims are hereby DISMISSED in their entirety.  Defendants' request for an award of costs and fees is hereby DENIED in the absence of authority and evidence warranting the award.

      SO ORDERED.

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated:  March 6, 2006


CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on March 6, 2006, by electronic and/or ordinary mail.

s/Josephine Chaffee
Secretary/Deputy Clerk